*L. Kathleen Chaney*
*Lambdin & Chaney, LLP*
*4949 S Syracuse St, Suite 600*
*Denver, CO 80237*
*kchaney@lclaw.net*
*(303) 799-8889*
*(303) 799-3700*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No.: _____

SCOTTSDALE INSURANCE COMPANY, an Ohio corporation

      Plaintiff,

v.

MATAROZZI PELSINGER BUILDERS, INC., a California Corporation
JEFFREY SAFCHIK
WENDY SAFCHIK

      Defendants.

_____

## COMPLAINT
_____

Plaintiff, Scottsdale Insurance Company, by and through its attorney, L. Kathleen Chaney with the law firm of Lambdin & Chaney, LLP, for its Complaint against the Defendants, hereby respectfully states as follows:

### I.    JURISDICTION & VENUE

1.    Scottsdale Insurance Company (hereinafter "Scottsdale") is an Ohio corporation with its principal place of business in Arizona.

2.      Matarozzi Pelsinger Builders, Inc. (hereinafter "MatPel") is a California corporation with its principal place of business in California and a Wyoming location at 3555 N Chaney Lane, Wilson, Wyoming 83014.

3.      Jeffrey Safchik is a citizen of, and domiciled in, the State of Florida.

4.      Wendy Safchik is a citizen of, and domiciled in, the State of Florida.

5.      Plaintiff is of diverse citizenship from Defendants.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332(a).

6.      The Court also has supplemental jurisdiction over all other claims herein, including claims for money damages, because said claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a).

7.      Scottsdale brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and FED. R. CIV. PRO. 57, seeking construction of a commercial liability policy of insurance, declaring that Scottsdale does not owe a duty to defend or indemnify Defendant MatPel with regard to the claims made against it by Defendants Jeffrey and Wendy Safchik in the Underlying Lawsuit.

8.      Scottsdale also seeks affirmative relief in the form of money damages for reimbursement of attorney fees and expenses incurred and paid in defending MatPel against the Safchiks' claims.

9.      All necessary parties as required by 28 U.S.C. § 2201-2202, and FED. R. CIV. PRO. 57, are before the Court.

10.    Venue is this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2), because Defendant MatPel has a Wyoming rated location on the Scottsdale policy and the Project at issue is located within the District of Wyoming.

## II.    THE UNDERLYING LAWSUIT

11.    The Safchiks filed a Complaint against MatPel, Scottsdale and Absolute Foam Insulation Systems, Inc. on October 3, 2025, in the United States District Court for the Northern District of California, San Francisco Division, case number 25-cv-08468-AGT (the "Underlying Lawsuit"). *Attached as **Exhibit 1.***

12.    The Underlying Lawsuit arises out of the construction of a new single-family residence and guest house within the Solitude subdivision in Jackson, Teton County, Wyoming, and generally described as 1180 W. Bar BC Ranch Road (the "Project").

13.    MatPel and the Safchiks entered into a contract for the Project dated May 27, 2019 (the "Contract"). *Attached as **Exhibit 2.***

14.    Pursuant to Article 13.1 in the Contract, the Contract shall be governed by the law of the place where the Project is located, excluding that jurisdiction's choice of law rules. ***Exh 2***, pg. 53 of 107.

15.    MatPel entered into a Subcontractor Agreement with Absolute Foam Insulation for the Project dated September 4, 2019. *Attached as **Exhibit 3.*** Absolute Foam's scope of work including the insulation work called for by the Project documents.

16.    In or about May 2019, MatPel began the construction work, and a Certificate of Occupancy was issued on September 9, 2021. ***Exh 1, ¶¶** 18, 20.*

17.     In or about January 2022, it was discovered that the exterior soffits on the Project were damaged with noticeable warping and cupping (the "Initial Soffit Damage"). *Exh 1, ¶21.*

18.     Defendants MatPel and Absolute inspected the soffits at that time and these Defendants concluded that the Initial Soffit Damage was caused by the defective and non-conforming insulation work by Absolute on top of the soffits. *Exh 1, ¶22.*

19.     At the time that the Initial Soffit Damage was discovered, observed and investigated, the Plaintiffs were advised that the issue of the defectively installed insulation was limited to the area of the soffits. *Exh 1, ¶23.*

20.     Neither Defendant MatPel, nor Defendant Absolute, advised the Plaintiffs that the defective and non-conforming nature of the insulation installation existed, or was likely to exist, in any other part of the Project. *Exh 1, ¶24.*

21.     In or about February 2022, the Plaintiffs engaged SGH engineers to inspect and evaluate the areas of concern related to the Initial Soffit Damage. SGH performed an onsite investigation and inspection on March 17 and 18, 2022. *Exh 1, ¶25.*

22.     SGH issued a report dated April 22, 2022, which provided its conclusions based upon its investigation of the areas of concern. (The "SGH Soffit Report"). *Exh 1, ¶26.*

23.     The April 22, 2022, SGH Soffit Report concluded that:

Based on our observations and on information provided to us from others, we conclude the following:

• The air barrier is discontinuous at the top of the north master bedroom wall. Relatively warm, humid air moves through the incomplete air barrier to the airspace under the eave ccSPF and above the soffit boards (Figure 4, above). The air cools

and condenses on adjacent surfaces, wetting the side of the soffit boards. The differential drying rate through the bottom surface of the soffit boards causes the observed cupping.

• The air barrier discontinuity is a result of the roof ccSPF ineffectively connecting to the Tyvek house wrap wall air barrier. The air path starts from the interior side of the wall framing and flows over the wall framing. The installed ccSPF did not block this flow over the north wall framing.

• The cupping is most visible on the northern walls of the main building and the master bedroom. The incomplete air barrier construction may occur in other locations, but different solar conditions or construction conditions may change the effect on the soffit boards.

*Exh 1, ¶ 27.*

24.    Subsequent to the issuance of the SGH Soffit Report, the SGH Soffit Report was provided to Defendant MatPel and the Project Architect, Northworks, on or about April 22, 2022. *Exh 1, ¶ 28.*

25.    In February 2024, Plaintiffs noticed further soffit damage and notified MatPel and the Project Architects on February 23, 2024, of the additional soffit damage. *Exh 1, ¶ 29.*

26.    Upon information and belief, Defendant MatPel provided Defendant Absolute with a copy of the SGH Soffit Report. *Exh 1, ¶ 30.*

27.    In early 2022, MatPel advised the Plaintiffs that MatPel and Defendant Absolute had agreed to repair the defective and non-conforming insulation work in the area of the soffits and to replace the damaged soffits. *Exh 1, ¶ 31.*

28.    The soffit repair by MatPel/Absolute was unsuccessful in that it failed to remedy the defective and non-conforming work and was completed without any

consideration whether the defective and non-conforming insulation work existed in other parts of the Project.  *Exh 1, ¶ 32.*

29.    On February 29, 2024, the Project Architect performed an inspection of the exterior soffits and observed that there was additional soffit related damage, including in areas previously repaired by MatPel/Absolute.  *Exh 1, ¶ 33.*

30.    In the period between March 2024 and September 2024, MatPel participated in numerous meetings and discussions with the Project Architect, in addition to conducting site visits with the Project Architect and with an expert in insulation from Bressler Insulation, Brock Bressler.  *Exh 1, ¶ 34.*

31.    These further inspections revealed that the insulation above the ceiling and below the roof structure ("the interstitial space"), not just in the soffits, was defective and non-conforming.  *Exh 1, ¶ 35.*

32.    On August 15, 2024, representatives of MatPel, Northworks and Bressler Insulation met onsite to review and discuss the issues presented by the deficient and non-conforming insulation work on the Project. The results of this meeting were then summarized by Northworks in an August 16, 2024, email.  *Exh 1, ¶ 36.*

33.    The conclusion that was reached by MatPel, Northworks and Bressler based upon all information then available, was that the insulation above the ceiling and below the roof structure was defective and non-conforming and it needed to be removed and replaced.  *Exh 1, ¶ 37.*

34.    MatPel has had actual notice that a claim was being asserted by the Plaintiffs relating to the deficient and non-conforming insulation work since the date it was

discovered and MatPel notified its insurance carrier, Defendant SIC, of these claims. At no time has MatPel denied its obligation to repair the insulation issues. ***Exh 1, ¶ 38.***

35.     MatPel agreed from the time the defective and non-conforming work was first discovered that it had a duty to the Plaintiffs to repair and correct that work in a timely manner. ***Exh 1, ¶ 56.***

36.     The MatPel Contract expressly provides at section 12.2.2.1 that MatPel was to commence the corrective repair work within fifteen (15) days after receipt of a written notice (notice of defect). ***Exh 1, ¶ 57.***

37.     Throughout the first seven (7) months of 2025, representatives of MatPel and the Plaintiffs remained in constant communication regarding the need to commence the repair work. ***Exh 1, ¶ 58.***

38.      In particular, MatPel advised the Plaintiffs that it could undertake the repair work. ***Exh 1, ¶ 59.***

39.     To facilitate the commencement and completion of the Repair work, the Plaintiffs offered to avoid using the Project for the period of January 6, 2025, through May 31, 2025, without seeking reimbursement for alternate lodging during their winter ski vacations. ***Exh 1, ¶ 60.***

40.     MatPel assured the Plaintiffs that it could perform the repair work in the timeframe offered, and that the subcontractors required to perform work similarly committed. ***Exh 1, ¶ 61.***

41.     Scottsdale is currently providing a defense to MatPel pursuant to a reservation of rights dated March 31, 2025, as supplemented by this action.  *Attached as Exhibit 4.*

### III.     THE SCOTTSDALE CGL POLICIES

42.     Scottsdale hereby incorporates all preceding paragraphs as if fully set forth herein.

43.     Scottsdale issued the following commercial general liability ("CGL") policies:

- Policy number BCS0039424 (7/25/2021 to 7/25/2022);
- Policy number BCS0040140 (7/25/2022 to 7/25/2023);
- Policy number BCS2000762 (7/25/2023 to 7/25/2024).

44.     The Schedule of Locations on the policies includes 3555 N Chaney Lane, Wilson, Wyoming 83014.

45.     Each policy has a $1 million any one occurrence limit for Bodily Injury and Property Damage Liability.

46.     Each policy contains a CGL Coverage Form [CG 00 01 04 13] which contains the following provisions as modified by endorsement as indicated:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.     Insuring Agreement**
    **a.**     We will pay those sums that the insured becomes obligated to pay as damages of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  * * *
    **b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

**(2)** The "bodily injury" or "property damage" occurred during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.** **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

- 9 -

      **(1)**    That the insured would have in the absence of the contract or agreement; or

      **(2)**    Assumed in a contract or agreement that is an "insured contract"[.] . . .

**j.**    **Damage To Property**

"Property damage" to:

\*      \*      \*

      **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

      **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*      \*      \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

      **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

      **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out "your product" or "your work" after it has been put to its intended use.

**Continuing Or Ongoing Damage[1]**

This insurance does not apply to "property damage" when any of the following apply:

**1.**    The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception of this policy.

**2.**    The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to

---

[1] As modified by **CONTINUING OR ONGOING DAMAGE EXCLUSION** endorsement

have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

**SUPPLEMENTARY PAYMENTS** – **COVERAGES A AND B**

**1.**    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    **e.**    All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4.**    **Other Insurance**[2]

    **b.**    **Excess Insurance**

        **(1)**    This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

            **(e)**    That is valid and collectible insurance available to any insured under any other policy.

        **(2)**    When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**SECTION V – DEFINITIONS**

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.**    "Insured contract" means:

    *    *    *

    **f.**    That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    *    *    *

---

[2] As modified by **AMENDMENT TO OTHER INSURANCE CONDITION** endorsement

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**    When all of the work called for in your contract has been completed.

            **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

        \*    \*    \*

**17.**    "Property Damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    \*    \*    \*

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

## IV.    THE SCOTTSDALE UMBRELLA POLICY

47.    Scottsdale hereby incorporates all preceding paragraphs as if fully set forth herein.

48.    Scottsdale issued a Commercial Excess Liability Policy, policy number XLS2002525, with a policy period of 7/25/2023 to 7/25/2024 and a $5 million each occurrence limit [the "Excess Policy"].

49.    The Excess Policy Each policy contains a Commercial Excess Liability Coverage Form [CX 00 01 04 13] which contains the following provisions as modified by endorsement as indicated:

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** – Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

**SECTION I – COVERAGES**
**1.    Insuring Agreement**
      **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.
            We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of

"controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

But:

**(1)** The amount we will pay for "ultimate net loss" is limited as described in Section **II** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage Part. However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Coverage Part.

**b.** This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

**c.** If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its policy period in order for that apply to the claim only if the "event" causing that "injury or damage" takes place during the policy period of this Coverage Part.

**2.** **Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

**CONTINUING OR ONGOING DAMAGE EXCLUSION**[3]

This insurance does not apply to "property damage"/property damage when any of the following apply:

---

[3] As modified by **CONTINUING OR ONGOING DAMAGE EXCLUSION** endorsement

1.    The "property damage"/property damage first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2.    The "property damage"/property damage is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence"/occurrence which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

**KNOWN INJURY OR DAMAGE EXCLUSION[4]**

Insurance provided under this Coverage Part does not apply to:

**Known Injury Or Damage**

"Injury or damage" arising out of an occurrence, offense or accident which was known to any insured prior to the policy period.

For the purposes of this exclusion, "injury or damage" is known if, prior to the policy period, any insured authorized by you to give or receive notice of an occurrence, offense or accident knew that the "injury or damage" had occurred, in whole or in part.

If such insured knew, prior to the policy period that the "injury or damage" occurred, then any continuation, change or resumption of such "injury or damage" during or after the policy period will be deemed to have been known prior to the policy period.

**SECTION III – CONDITIONS**

The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

3.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**SECTION IV – DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

1.    "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

2.    "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

3.    "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

4.    "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying  insurance" arising from an "event".

5.    "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

---

[4] As modified by **KNOWN INJURY OR DAMAGE EXCLUSION** endorsement

**6.**     "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.**     Settlements, judgments, binding arbitration; or

**b.**     Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

50.     The CGL policies and Excess Policy also contain the following provisions:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**[5]

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any Insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

**LIMITATIONS OF COVERAGE – TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**, which provides that the following Condition is added to the Policy:

It is our stated intention that the various coverage parts or policies issued to you by us. or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim or suit. Notwithstanding the other insurance provision, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same claim or suit, the maximum limit of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limit of insurance under any one coverage part or policy.

---

[5] Ad modified by **PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION** endorsement

## V.    FIRST CLAIM FOR RELIEF
(*Declaratory Judgment*)

51.    Scottsdale hereby incorporates all preceding paragraphs as if fully set forth herein.

52.    Pursuant to 28 U.S.C. § 2201, this Court has authority to declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.

53.    An actual controversy exists between Plaintiff, MatPel and the Safchiks.

54.    MatPel has made a claim for defense and indemnity from the Safchiks claims under the Scottsdale policies.

55.    Plaintiff seeks declaratory judgment, pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, *et seq.*, and FED. R. CIV. PRO. 57, stating:

   a.    The insuring agreements under the Policies have not been triggered because neither an occurrence nor property damage has been alleged;

   b.    MatPel knew prior to the inception of the first policy in July 2021 and prior to all subsequent policies that property damage had occurred in whole or in part;
      i.    Any continuation, change or resumption of such property damage during or after the policy period is deemed to have been known prior to the policy period;

   c.    Alternatively, coverage is precluded based on the following exclusions:
      i.    Expected Or Intended Injury
      ii.    Contractual Liability
      iii.    Damage to Property
      iv.    Damage to Your Work
      v.    Damage to Impaired Property or Property Not Physically Injured
      vi.    Continuing or Ongoing Damage
      vii.    Known Injury or Damage

       viii.    Punitive or Exemplary Damages

    d.    Pursuant to the Supplementary Payments provisions, attorney fees sought by the Safchiks are not covered;

    e.    The Policy is void based on MatPel's breach of a policy condition by voluntarily assuming an obligation to undertake the repair work without Scottsdale's consent;

    f.    The Scottsdale policies are excess over Absolute Foam's insurance coverage;

    g.    Scottsdale does not have a duty to defend or indemnify MatPel for the injuries, damages and/or losses arising out of or related to the Underlying Lawsuit.

56.    In requesting this declaratory relief, Scottsdale Insurance is requesting an interpretation of the rights, legal status, and relationships, of the Parties to the Policy under the law and facts as stated herein.

57.    Such an interpretation is appropriate under the provisions of the Federal Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, and FED. R. CIV. PRO. 57.

## VI.    SECOND CLAIM FOR RELIEF
(*Recovery of Money Damages in the form of
Attorneys' Fees and Costs Paid on behalf of Defendant MatPel*)

58.    Scottsdale hereby incorporates all preceding paragraphs as if fully set forth herein.

59.    In agreeing to provide a defense to MatPel, Scottsdale reserved the right to seek an award of money damages in the form of reimbursement of attorney fees and expenses made by Scottsdale in the defense of the claims asserted by the Safchiks in a letter dated March 31, 2025.

60.    As a direct and proximate result of Scottsdale providing MatPel with a defense against the Safchiks' claims, Scottsdale incurred defense costs and attorneys' fees.

61.    Pursuant to its request for an interpretation of the rights, legal status, and relationships of the Parties, Scottsdale herein further seeks an award of money damages in the form of reimbursement of all defense costs and attorneys' fees paid by Scottsdale defending MatPel.

WHEREFORE, Plaintiff Scottsdale Insurance Company requests (I) that the Court determine the rights, status, or other legal relations of the parties under the above law and facts; (II) award Plaintiff Scottsdale Insurance Company all defense costs paid to and on behalf of MatPel because there is no coverage; and (III) for all other good and valuable relief to which Plaintiff may be entitled, including costs, expenses, attorney fees, expert witness fees, pre- and post-judgment interest as may be permitted by law, and any other relief the Court deems just and proper under the circumstances.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

DATED this 21st day of January, 2026.

Respectfully submitted,

LAMBDIN & CHANEY, LLP

By
L. Kathleen Chaney, Esq.
4949 S. Syracuse Street, Suite 600
Denver, Colorado 80237
Telephone:    (303) 799-8889
Email: kchaney@lclaw.net
*Attorneys for Plaintiff Scottsdale Insurance*